FILED

Anthony Lanza, (Bar No. 156703)
Brodie H. Smith, (Bar No. 221877)
LANZA & SMITH
A Professional Law Corporation
3 Park Plaza, Suite 1650
Irvine, California 92614-8540
(949) 221-0490
Fax (949) 221-0027

Attorneys for Plaintiff AMERICAN RESIDENTIAL EQUITIES XXVII, LLC

2012 JUN 25 PM 3:56

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

AMERICAN RESIDENTIAL EQUITIES XXVII, LLC, A Delaware Limited Liability Company;

Plaintiff;

vs.

REDWOOD RECOVERY SERVICES, LLC, a Florida Limited Liability Company; PETRA OPPORTUNITY FUND, LTD., a Cayman Islands Company; PETRA FINANCE, LLC, a Florida Limited Liability Company; PETRA OPPORTUNITY MANAGEMENT, LLC; AMERICAN RESIDENTIAL EQUITIES, INC., a Delaware Corporation; AMERICAN RESIDENTIAL EQUITIES, LLC, a Delaware Limited Liability Company; MIGUEL CARMONA, an individual; JOHN HANSEN, an individual; ERICK MAGNO, an individual; CHRISTIAN CUNHA, an individual; AIDEN COUCH, an individual; and DOES 1 through 10 inclusive;

Case No: CV 12-5537 ~ CAS (DTBx)

**COMPLAINT FOR:**

1. **RICO – Violation of 18 U.S.C. § 1962(c)**
2. **RICO – Violation of 18 U.S.C. § 1962(d) by Conspiracy to Violate 18 U.S.C. § 1962(c)**
3. **Fraud**
4. **Unfair Competition – California Business and Professions Code § 17200 *et seq.***
5. **Interference With Economic Relations**
6. **Breach of Fiduciary Duty**
7. **Unjust Enrichment**

[Jury Trial Demand]



X:\D\561-01\Pleadings\Complaint - 062512.doc

Defendants.

Plaintiff AMERICAN RESIDENTIAL EQUITIES XXVII, LLC, A Delaware Limited Liability Company ("ARE 27"), by and through its attorneys, assert the following allegations against defendants REDWOOD RECOVERY SERVICES, LLC, a Florida Limited Liability Company; PETRA OPPORTUNITY FUND, LTD., a Cayman Islands Company; PETRA FINANCE, LLC, a Florida Limited Liability Company; PETRA OPPORTUNITY MANAGEMENT, LLC; AMERICAN RESIDENTIAL EQUITIES, INC., a Delaware Corporation; AMERICAN RESIDENTIAL EQUITIES, LLC, a Delaware Limited Liability Company; MIGUEL CARMONA, an individual; JOHN HANSEN, an individual; ERICK MAGNO, an individual; CHRISTIAN CUNHA, an individual; and AIDEN COUCH, an individual:

**PARTIES**

1. Plaintiff ARE 27 is a Delaware Limited Liability Company with its principal place of business in the state of California.

2. Plaintiff is informed and believes, and thereon alleges, that defendant REDWOOD RECOVERY SERVICES, LLC, is a Florida Limited Liability Company with its principal place of business in the State of Florida.

3. Plaintiff is informed and believes, and thereon alleges, that defendant PETRA OPPORTUNITY FUND, LTD., is a Cayman Islands Company with its principal place of business in the State of Florida.

4. Plaintiff is informed and believes, and thereon alleges, that defendant PETRA FINANCE, LLC, is a Florida Limited Liability Company with its principal place of business in the State of Florida.

5. Plaintiff is informed and believes, and thereon alleges, that defendant PETRA OPPORTUNITY MANAGEMENT, LLC, is a Florida Limited Liability

Company, has its principal place of business in the State of Florida.

6. Plaintiff is informed and believes, and thereon alleges, that defendant AMERICAN RESIDENTIAL EQUITIES, INC. is a Delaware Corporation, and has its principal place of business in the State of California.

7. Plaintiff is informed and believes, and thereon alleges, that defendant AMERICAN RESIDENTIAL EQUITIES, LLC is a Delaware Limited Liability Company, and has its principal place of business in the State of California.

8. Plaintiff is informed and believes, and thereon alleges, that defendant MIGUEL CARMONA is an individual whose domicile is in the State of Florida.

9. Plaintiff is informed and believes, and thereon alleges, that defendant JOHN HANSEN ("Hansen") is an individual whose domicile is in Brazil.

10. Plaintiff is informed and believes, and thereon alleges, that defendant ERICK MAGNO ("Magno") is an individual whose domicile is in the State of Florida.

11. Plaintiff is informed and believes, and thereon alleges, that defendant CHRISTIAN CUNHA ("Cunha") is an individual whose domicile is in Brazil.

12. Plaintiff is informed and believes, and thereon alleges, that defendant AIDEN COUCH ("Couch") is an individual whose domicile is in Great Britain.

13. In addition to the defendants named in this action, upon information and belief, there are other parties, known and unknown, who participated in the scheme as alleged herein. The true names and capacities, whether individual, corporate, associate or otherwise, of defendants named herein as DOES 1 through 50, inclusive, are presently unknown to plaintiffs, who therefore sues said defendants by such fictitious names. Each of these fictitiously named defendants is responsible for the events and occurrences alleged herein which were legally and proximately cause by their conduct. Plaintiffs will seek leave to amend this pleading to state the true names and capacities of such fictitiously names defendants once ascertained.

14. As to all claims herein, at all times, each defendant was the agent of each

of the other defendants, and in doing the things alleged herein, was acting within the scope of such agency; all defendants are jointly and severally liable for the actions herein.

15. As set forth more fully in the Jurisdiction section below, Defendants Redwood Recovery Services, LLC, Petra Opportunity Fund, Ltd, Petra Finance, LLC, Petra Opportunity Management, LLC, Miguel Carmona, John Hansen, Erick Magno, Christian Cunha, and Aiden Couch are alter egos and/or agents of the others, with the entities serving as shams with no legitimate business purpose. The entities do not observe corporate formalities, they share a commonality of ownership, use directors interchangeably and without appropriate compensation for services, and operate as if they were one in the same, or not entities at all, aside from the improper purpose of avoiding U.S. tax laws. The aforementioned persons and entities infiltrated American Residential Equities, LLC, and American Residential Equities, Inc. (collectively, "American Residential") and, using insiders whom they bribed or extorted, controlled American Residential as their alter ego.

## FACTUAL SUMMARY

16. This action arises out of an intentional scheme and a course of fraudulent business practices engaged in by defendants with the purpose of using insiders to illegally funnel business opportunities to their own companies and away from related or sibling companies.

17. The American Residential defendants were Florida based investment companies that moved to California, and which, during most of the relevant time period, bought, sold, and managed pools of residential mortgage loans. Through affiliates, American Residential also originated commercial and hard money loans. Jeffrey Kirsch ("Kirsch") was an officer of American Residential.

18. American Residential's business model involves the creation and maintenance of a number of separate, numbered LLCs. Plaintiff ARE 27 is one of

those numbered LLCs.

**The Individual Defendants Infiltrate American Residential**

19. Defendant Magno is a tax attorney, formerly employed by the Miami office of the law firm Baker & McKenzie. In 2005, Magno approached Jeffrey Kirsch, the president of American Residential, Inc., stating that he wished to leave Baker & McKenzie to start his own law firm. As part of this transition, he wished to direct some of his clients to invest in American Residential.

20. Between the months of May and August, 2005, several of Magno's clients invested in some of American Residential's subsidiary companies. Magno was involved in overseeing these investments. Through that process, Magno became familiar with American Residential's structure and business model.

21. Magno's clients' investments with American Residential, through one of its numbered LLCs, proved profitable. One of Magno's clients, Elevenhome Limited, later reinvested its profits in another of American Residential's numbered LLCs. The principal of Elevenhome Limited was Defendant Couch. Defendant Couch was well acquainted with defendants Magno, Carmona, Cunha, and Hansen.

22. In or about 2006, Magno introduced Kirsch (an officer with American Residential) to the other individual defendants Carmona, Cunha, Couch, and Hansen. These individual defendants (collectively the "individual defendants"), devised a scheme to raid American Residential of its best investments and dump less desirable investments on its subsidiaries. The individual defendants would later form and become principals of newly formed legal entities, which would become vehicles through which defendants diverted the most profitable investment opportunities away from American Residential's numbered LLCs, including ARE 27.

23. The cooperation of American Residential was obtained through a well plotted scheme to infiltrate the American Residential entities from within. The Petra defendants targeted employees of American Residential, including but not limited to,

Dennis Stemmle and David Merrill, to aid in obtaining insider information for Petra and individual defendants, and in inducing American Residential to breach its obligations to its other clients, including Plaintiff, in order to benefit Petra and the individual defendants.

**Petra & Redwood Are Formed**
**As Vehicles of the Scheme, and Operate as Alter Egos**

24. In or about May, 2006, the individual defendants incorporated defendant Petra Opportunity Fund, LTD, in the Cayman Islands. The purpose of Petra Opportunity Fund was to receive the better investment opportunities originated by American Residential, which were arranged by American Residential and its insiders working against the best interests of the numbered LLCs. Eventually, two other Petra entities were also formed: Petra Finance, LLC, and Petra Opportunity Management, LLC.

25. Defendant Redwood Recovery Services, LLC, ("Redwood") is owned by Petra Finance, LLC, and managed by defendant Carmona. It became simply another sham vehicle through which defendants obfuscated their unlawful transactions. The three Petra entities described above plus Redwood are collectively referenced as "Petra," or "the Petra defendants" unless otherwise specified. The primary purpose of the Petra entities' existence was tax evasion, as alleged more fully below under the "Jurisdiction" heading.

26. In 2006, a new entity called American Residential Equities C, LLC ("American Residential C") was formed, and became the domestic front of Petra. Since Wall Street firms normally required new funds to be vetted, and the individual defendants wished to avoid the vetting process, they used American Residential's established reputation to circumvent the vetting process for Petra. American Residential C became a conduit through which Petra conducted its deals, and was used for buying and selling pools of loans on Petra's behalf.

27. When defendants identified a pool of loans that they felt was suitable for purchase by Petra, American Residential C would purchase the loans from the seller – using Petra's money. There was a master asset purchase agreement between American Residential C and Petra, and term sheets were created on a deal by deal basis so that American Residential C would "sell" and Petra would "buy" the pools of residential loans for the same purchase price that American Residential C was paying to the outside seller. The master asset purchase agreement and related term sheets were executed simultaneously with the Purchase Agreement between American Residential C and the outside seller so that the funds received from Petra in exchange for the sale of the loans from American Residential C were used by American Residential C to purchase the loans from the outside seller. Conversely, when American Residential C presented the loans for sale to outside purchasers, it would "buy" the loans back from Petra using the monies that it received from the sale to the outside purchaser.

**Defendants Use American Residential to Arrange Self-Dealing Transactions**

28. In addition to the purchases and sales with outside parties, American Residential would coordinate internal transactions whereby American Residential C would buy loans from and/or sell loans to the other numbered American Residential entities, such as ARE 27. At the direction of Petra and the individual defendants, American Residential C would buy assets, through non-arm's length transactions, from these numbered LLCs in order to feed Petra's continuous demand for new product. As ARE 27 would later discover, all of the best investment opportunities were being transferred away from it and to Petra, without adequate compensation.

29. As the market began to falter in 2007, defendants' emphasis shifted from investing in pools of real estate loans to origination of commercial loans and hard money lending. With respect to commercial loans, promissory notes and pledge agreements were executed by American Residential C in favor of Petra in the same

amounts as the respective commercial loans being originated.

30. The structure of American Residential's agreement with its numbered LLCs, was such that American Residential was entitled to collect a management fee and, in the case of a few of the numbered LLCs, a small share of the profits. However, pursuant to American Residential's agreement with Petra, American Residential was entitled to a much greater percentage of the profits, which incentivized American Residential to generate profits for Petra as opposed to the numbered LLCs, including ARE 27.

31. Additionally, as American Residential's largest client, Petra exploited this leverage, along with advantages gained through defendants' infiltration of the ranks at American Residential, to control the investments structured and managed by American Residential. By controlling the decisions of American Residential, Petra and the individual defendants ensured that the most profitable investment opportunities were placed in ARE C for Petra's benefit for the lowest possible price, even where the numbered LLCs, including plaintiff, had to be raided to achieve that goal. On the other hand, through their control of American Residential, these defendants ensured that less desirable or unprofitable investments were sold to the numbered LLC, including Plaintiff, for higher than market values.

32. Due to the incestuous arrangement wherein Petra essentially controlled American Residential, Petra received preferential treatment compared to other similar investor entities, including Plaintiff. With American Residential directing and executing both sides of self-dealing transactions, they sold hard money loans at inflated prices to the numbered LLCs, and loans were purchased by American Residential C/Petra from the numbered LLCs for discounted prices. American Residential also generated profits for Petra at the expense of the numbered LLCs by offering loan pools first to Petra, and only offering the numbered LLCs loan pools which were deemed inferior, or which Petra had turned down. Petra's funds were always invested or reinvested promptly in order to turn a profit for Petra and the other

individual defendants, and a resultant profit for American Residential.

33. Defendants Magno, Carmona and Cunha were sophisticated businesspersons who took a very active role in the day-to-day management of American Residential and its assets, which included the various above-referenced transactions and methodologies. Carmona was a registered hedge fund advisor and Magno was a tax attorney with both a CPA and MBA. Cunha, likewise, had an MBA and worked directly for defendant Hansen. The individual defenants controlled the activities described herein directly from the American Residential offices, where they worked daily directing these improper activities. They interacted with all American Residential employees on a daily basis and required sophisticated reporting. They knew that loans were being sold internally for the benefit of Petra and to the detriment of the numbered LLCs. They profited substantially from this arrangement, and thus encouraged, and in fact insisted, that the disfavored treatment of the numbered LLCs occur, intentionally causing damages to the numbered entities, including ARE 27.

34. Defendants Hansen and Couch (both foreign residents, of Brazil and Great Britain respectively) would periodically travel to the USA in order to ensure the continuing success of their unlawful arrangement with American Residential. They continually came to the American Residential offices and met with the individual defendants to discuss and arrange the details of this enterprise, which illegally enjoyed profits at the expense of ARE 27.

**Petra and the Individual Defendants Extort Kirsch**

35. In late 2007 and early 2008, when financial markets began to deteriorate more rapidly, Petra and the individual defendants, although still earning profits at a time when others in the industry were almost uniformly suffering losses, were no longer making the significant profits they had become accustomed to, even with their manipulation of the assets via American Residential. Petra decided to terminate its relationship with American Residential, and struck a plan to abscond with American

Residentials' assets. In order to accomplish this, Petra secretly recruited the assistance of American Residential's Chief Operating Officer, Dennis Stemmle, and its in-house attorney, David Merrill, with whom they had been working closely. Petra and the individual defendants encouraged Merrill and Stemmle to abandon the best interests of American Residential in favor of the interests of Petra by promising employment and other financial opportunities upon dissolution of the relationship.

36. With Merrill and Stemmle's help, Petra devised a scheme to extricate their own assets as well as all significant assets of/from American Residential. Merrill and Stemmle secretly conspired with Petra to pressure Kirsch, ostensibly claiming to have American Residential's best interests in mind, into relinquishing control of the Petra portfolio. Defendants also induced Kirsch to sign a "Settlement Agreement", in March, 2008, and $10M Promissory Note (dated March 17, 2008) which represented Petra's allegedly "anticipated" but unproven losses on their portfolio.

37. In the Settlement Agreement referenced above, Kirsch agreed, on behalf of American Residential, the managing member of ARE 27, to turn over all significant assets – essentially rendering the American Residential entities without assets. These assets were wrongfully conveyed by American Residential C to Petra Finance, LLC, without ARE 27's knowledge or consent. Kirsch would not have made this agreement on behalf of American Residential, had his own General Counsel and Chief Operating Officer not strongly advised him that it was necessary to protect the entities from the criminal and civil liability being simultaneously threatened by Petra. Had Kirsch known that they were working in concert, to the detriment of American Residential, their interests, and the interests of their other clients and creditors, he never would have agreed to divest American Residential of its assets to the benefit of Petra. Subsequently, upon acquiring legal advice untainted by this secret conflict, Kirsch learned that the threatened liability was not as dire as warned by American Residentials' untrustworthy advisors, and that defenses and counterclaims were readily available should Petra pursue its threatened claims.

38. Even with the urging of American Residential's untrustworthy advisors and threats of liability, Kirsch had at first resisted Petra's demands. Kirsch then received an unwelcome visit from Carmona, Cunha, and Magno at his personal residence late one evening. The physical safety of both Kirsch and Kirsch's son was threatened. Only then did Kirsch sign the settlement documents.

39. By extorting Kirsch into signing the $10M Promissory Note and transferring American Residential's assets to Petra, the individual defendants, through Petra, again induced American Residential to provide preferential treatment so that Petra could recoup its investment ahead of the numbered LLCs, all without demonstrating that actual losses had in fact occurred. Petra did not suffer any actual losses with American Residential, despite the historical mortgage industry collapse. In fact, at the trial of the *Redwood v. Kirsch* case (see below), the Petra defendants presented an exhibit which consisted of a chart showing that they earned $6M in <u>profits</u> during this economic downturn.

40. The Settlement Agreement between American Residential and Petra was not limited to transfer of real estate assets from American Residential to Petra. Rather, it sought to transfer all assets of value belonging to any American Residential entity to Petra, so that there would be nothing available should others seek to hold American Residential liable for losses incurred.

41. On August 8, 2008, the parties executed an Amended Settlement Agreement, the purpose of which was to ratify and legitimize certain terms of the previously executed March 2008 Settlement Agreement which may have been unenforceable. This Amended Settlement Agreement also provided for the transfer of American Residential Equities, LLC's interests to defendant Redwood. That interest was sold to a third party, resulting in additional funds being diverted to Redwood and/or Petra, and not passing through American Residential Equities, LLC, where they could have been distributed amongst the other entities who had suffered losses.

**ARE 27's Discovery of Defendants' Scheme**

42. In late 2008, Defendant Redwood filed a lawsuit against Jeffrey Kirsch and American Residential, in Florida state court, for collection on the $10M Promissory Note, among other things. That lawsuit was entitled *Redwood Recovery Services, LLC and Elevenhome Limited v. Jeffrey L. Kirsch et al.* filed in the Circuit Court of the Eleventh Judicial Circuit For Miami-Dade County, Florida, Case Number 08-65603 CA 40 ("*Redwood v. Kirsch*"). Trial in that matter began on or about January 17, 2011.

43. Thereafter, the Daily Business Review published the trial results in an article dated on or about April 14, 2011. It was through this reporting that ARE 27 discovered the unlawful scheme alleged above, including American Residentials' involvement. Prior to that time, ARE 27 and its investors only knew that they had lost a significant amount of money when the economy collapsed beginning in 2007. ARE 27 was not aware that these losses were either caused by or exacerbated by defendants' use of ARE 27, through American Residential, as a repository of inferior investments and a cheap source of superior investments. Particularly, Phil Sigel of Bancroft Insurance & Casualty, the beneficial owner of ARE 27, became concerned upon reading the press coverage, and therefore initiated an investigation, in or about January, 2011. After defendants' wrongdoings were revealed, Sigel's investigation discovered that ARE 27's financial misfortunes since 2007 were the result of a series of fraudulent and unlawful transactions between the Petra defendants and other American Residential entities.

**NATURE OF THE ACTION**

44. This Complaint alleges, *inter alia*, violations of the *Racketeer Influenced and Corrupt Organizations Act* ("RICO"), 18 U.S.C. § 1961, et seq., and is brought by

plaintiff in connection with the scheme devised, conducted and/or participated in by defendants Petra, American Residential, Redwood, and the individual defendants. Each of the aforementioned defendants and others engaged in a pattern of racketeering activity, and conspired to do so, all to the detriment and damage of plaintiff.

45. This Complaint further alleges, *inter alia,* violations of the *California Business & Professions Code* §§ 17200 et seq., for unfair competition, and is brought by plaintiff in connection with the acts of defendants, whereby defendants made false representations and concealed facts from ARE 27, and the others numbered LLCs. These acts were malicious and intended to cause American Residential, as controlled by Petra and the individual defendants, to provide preferred treatment to Petra and Redwood, at the expense of ARE 27, by arranging and exploiting self-dealing transactions. Thus, defendants engaged in a pattern of racketeering activity, and conspired to do so, all to the detriment and damage of plaintiff.

46. This Complaint also alleges claims for: (i) fraud (intentional misrepresentation and concealment); (ii) interference with economic relations; (iii) breach of fiduciary duty; and (iv) unjust enrichment.

## JURISDICTION

47. This Court has jurisdiction over the claims for relief in this action under 18 U.S.C. §§ 1964(a) [RICO-Equity Relief] and 1964(c) [RICO-Right to Sue and Treble Damages], 28 U.S.C. §§ 1331 [Federal Question], and 1367(a) [Supplemental Jurisdiction].

48. Plaintiffs' principal place of business is in Los Angeles, California. Defendants' American Residential, Inc. also has its principal place of business in Los Angeles, California. American Residential, LLC, again, has its principal place of business in Los Angeles, California.

49. In the residential portfolio transferred via the Settlement Agreement, the highest priced assets ($5M) generally consisted of loans for California properties.

These loans, secured by California mortgages, composed approximately 20% of the value of the portfolio, which is the greatest percentage of any state represented in the portfolio. The Petra defendants have had and continue to have ongoing contacts with the State of California, making investments in California mortgage assets and real estate, buying, selling, and renting properties, and specifically seeking out and utilizing local California real estate brokers to originate California loans. The Petra defendants came into California during and as part of an enterprise to encourage brokers to originate residential hard money loans ("D paper"). In doing so, they assembled and maintained a network of originators in the state, all for Petra's benefit. Further, the Petra defendants are currently availing themselves of California state courts in their efforts to collect on judgments obtained in the *Redwood v. Kirsch* lawsuit. In furtherance of those efforts, defendants have hired local California attorneys, domesticated their judgment in California, sent investigators to interview plaintiff's employees in California, and attempted to subpoena Kirsch's daughter in California.

50. The Petra defendants operate a single business enterprise through multiple foreign and domestic entities, the purpose being to avoid U.S. taxes. Defendants interchangeably use their foreign and domestic entities to defraud the Internal Revenue Service. The Petra defendants regularly execute fraudulent affidavits attesting, falsely, that they are legitimate domestic entities in order to avoid U.S. tax withholdings. Petra has done this in California transactions, including an April, 2009, Foreign Investment in Real Estate Tax Act ("FIRPTA") affidavit concerning property in Fontana, California, the content of which is fabricated.

51. The Petra defendants are alter egos of each other; are sham entities; and are treated by their principles as interchangeable with each other. Their managers (Miguel Carmona, Christian Cunha, and Erick Magno), and their beneficial owners (John Hansen and Gerry Couch), also operate these entities while neglecting corporate formalities, as if these entities were simple extensions of their personal finances.

There is no legitimate business purpose for these multiple entities. They do not observe corporate formalities, have a commonality of ownership, use directors interchangeably, and operate as if they are, in fact, one and the same. The purpose for their existence is (in addition to extortion and fraud) is to unlawfully shield the actual investor owners from U.S. tax laws.

52. The individual defendants also used the Petra defendants and American Residential as their alter egos. In doing so, the individual defendants engaged in the following improper acts - which are listed below to correspond with the factors recognized under California for piercing the "corporate veil" (thereby establishing alto ego liability):

(a) Acted in bad faith. The individual defendants knew that it was illegal to cause American Residential to divert the stronger performing assets away from ARE 27, and to cause American Residential to divest itself of its assets through the Settlement Agreement, but did so anyway for pecuniary gain. Defendants' bad faith is evidenced by the extreme efforts undertaken by defendants to conceal the true nature of these transactions, as set forth above and more fully under the cause of action for fraud.

(b) Contracted with third parties. The individual defendants directed Petra to contract with third parties with the intent to avoid performance by using corporate/LLC entities as shields against personal liability. Specifically, the individual defendants used Petra to enter into contracts with American Residential, and used American Residential C to contract with third parties, knowing that the transactions were illegal and for tax evasion purposes, but nevertheless attempting to use the entities to shield themselves personally from liability. In the same way, the Petra defendants were formed to act as the alter egos of American Residential – to avoid tax liability and to transfer assets belonging to ARE 27 to themselves.

(c) Diverted assets. The individual defendants diverted assets from the

American Residential defendants to the Petra defendants as a way of ensuring that the Petra defendants would have sole possession of these preferred assets, in disregard of other entities' claims to the same assets –such as ARE 27 and the other numbered LLCs. After the assets were in Petra's possession, the individual defendants then ensured that the assets were liquidated and funds transferred to their personal accounts.

(d) Personally dominated the corporations/LLCs. The individual defendants were the managers and members of the Petra defendants, and treated the entities interchangeably. For instance, the Petra defendants lent funds to American Residential. Yet, Petra and the individual defendants structured the Settlement Agreement with American Residential so that the payments on the $10M Promissory Note and other benefits negotiated in the Settlement Agreement all went to *Redwood*. Redwood tendered no consideration in return, except perhaps an unknown quantity of worthless shares. On information and belief, Redwood was created for the sole purpose of entering into the settlement agreement with American Residential. It has no other purpose.

Later, the individual defendants instructed that payments be made on the $10M Promissory Note to Petra Finance, LLC, in spite of language to the contrary in the Settlement Agreement. Again, the individual defendants used the Petra defendants interchangeably.

As another example, the Settlement Agreement requires American Residential to turn over a list of mortgage and/or real estate assets to Petra Finance. Yet provision (B)(2) provides American Residential the opportunity to offset the $10M Note to *Redwood* by buying back those mortgage/real estate assets from *Petra*. Once again, the individual defendants treated Petra and Redwood as a single entity.

The Petra defendants, under control of the individual defendants, in turn controlled American Residential through their inside influence over its officers

and key employees, as alleged above.

(e) Used the same office location. The Petra defendants, including Redwood, operate in the same office space, 7330 SW 148th St., Miami, FL 33158. (Before this, they operated from Magno's office). The individual defendants split their time between this office and the office headquarters of American Residential, located at 848 Brickell Avenue Penthouse 1, Miami, FL 33131. The individual defendants would often work in both offices on the same day.

(f) Employed the same attorneys. During the relevant time period, the Petra defendants, the individual defendants, and American Residential all employed the same attorneys, namely Eric Magno and David Merrill. The individual defendants secretly paid $50,000 to Merrill to induce him to breach his duties to American Residential and to, instead, work for both American Residential and Petra, in an obvious conflict-of-interest.

(g) Used the entities to procure labor and services for other persons and entities. The individual defendants used American Residential (particularly American Residential C) as a conduit to procure favored assets on behalf of Petra, which in turn was used to as the alter ego of the individual defendants.

(h) Failed to adequately capitalize the corporations/LLCs. The Petra defendants never had any fixed assets, such as property, furniture or equipment. Instead, the Petra defendants merely used the office equipment and other fixed assets belonging to its members - Magno, Carmona, and Cunha. Petra also failed to hire employees. Miguel Carmona, manager of Petra Finance, LLC and Director of Petra Opportunity Fund, was not formally compensated for either position. Petra was operated exclusively by its members, the individual defendants. On information and belief, Petra also failed to create company letterhead, website, signage, or other typical indicia of a legitimate business enterprise. The capital for Petra's investments came directly from other entities

owned by defendants Couch and Hansen, such as Ambigil Holdings, Ltd. The capital would be deposited into the company accounts only before transactions occurred. Once profits were realized, the funds were immediately removed to the accounts of its members. American Residential C was never capitalized at all, but rather it was used as a conduit.

(i) Failed to maintain minutes and adequate corporate records. The individual defendants disregarded all corporate formalities. They never held member, manager, or officer meetings. They failed to record corporate minutes, and they used one another's bank accounts interchangeably. Redwood (one of the Petra defendants) has no corporate records or existence other than its Articles of Incorporation. It has no tax returns, bank accounts, bylaws, minutes of meetings, or resolutions. The individual defendants are uncertain as to who the manager of Redwood is. Multiple individuals have claimed to manage Redwood, as evidenced by contradictory testimony from Miguel Carmona and Paul DeStefanis in other proceedings.

53. Petra and the individual defendants were alter egos of the American Residential entities, which are indisputably within the jurisdiction of this Court. Petra and the individual defendants acted interchangeably with and controlled American Residential, actively directing its business to pursue their own unlawful objectives. The parties are inextricably bound by the actions of the unlawful enterprise.

54. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b)(2) as the district in which a substantial portion of the events or omissions occurred, and in which a substantial portion of the property that is the subject of the lawsuit is located.

///

///

///

///

**FIRST CLAIM FOR RELIEF**

**(RICO – Violation of 18 U.S.C. § 1962(c))**

**Against All Defendants**

55. Plaintiff incorporates by reference all the foregoing paragraphs as though fully set forth herein.

56. Plaintiff ARE 27 is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

57. Each and every one of the defendants and other participants, known and unknown, are and at all times relevant, have been a "person" or "persons" within the meaning of 18 U.S.C. §§ 1961(3) 1964(b).

58. Each and every one of the defendants and other participants, known and unknown, were at all times alleged herein an "enterprise" associated in fact (hereinafter referred to as the "Petra Enterprise") within the meaning of 18 U.S.C. §§ 1961(4) and 1962, which was engaged in and the activities of which affected interstate commerce at the relevant times. In addition to the individual defendants, the Petra defendants and American Residential, the Petra Enterprise also consisted of David Merrill, Dennis Stemmle, Larry Lewis, Randy Frey (also directors of Petra entities), and Elevenhome Limited.

59. For the purpose of executing, attempting to execute and in furtherance of the above-described scheme, during the years 2006 and continuing to the present, defendants and other participants, known and unknown, knowingly and repeatedly transmitted or caused to be transmitted false telephone, facsimile and electronic communications, and made other uses of mail and wire services in repeated violation of 18 U.S.C. § 1343 & § 1344 (mail fraud and wire fraud), and used extortion of Kirsch to induce American Residential to conduct self-dealing, non-arm's length transactions that harmed ARE 27, in violation of 18 U.S.C. § 1951 et seq. and 18 U.S.C. §§ 875–877, including the Hobbs Act (extortion).

60. As alleged above, defendants' pattern of illegal activity, operating as an

enterprise, was extensive and continuous, and includes the following predicate acts, which is not an exhaustive list:

(a) The transmission via U.S. mail, electronically and over telephone lines (wire fraud), of fraudulent information assuring ARE 27 that it was receiving the best investment options and opportunities available to American Residential, actively concealing the true facts, and the electronic transfer of funds to complete these fraudulent transactions, in violation of 18 U.S.C. § 1343 & § 1344.

(b) The transmission via U.S. mail, electronically and over telephone lines, of fraudulent information assuring ARE 27 that the above transactions were arm's length transactions, allegedly not tainted by the corruption and self-dealing described herein, and actively concealing the true facts, in violation of 18 U.S.C. § 1343 & § 1344.

(c) The transmission using via wire of funds used to carry out the fraudulent schemes set forth above, including but not limited to, the wiring of funds for payments made on the promissory note, transfers of money from ARE C to/from Petra, transfers of money from companies controlled by Aiden or Couch to fund certain fraudulent transactions, and transfers of money to/from ARE 27 in non-arm's length transactions directed by defendants, all in violation of 18 U.S.C. § 1343 (wire fraud).

(d) The unlawful use of multiple sham entities to carry out a tax fraud scheme, avoiding tax liability on millions of dollars of revenue, in violation of 26 U.S.C. § 7201 *et seq*.

(e) The execution of fraudulent affidavits attesting, falsely, that defendants are legitimate domestic entities in order to avoid U.S. tax withholdings, including an April, 2009, FIRPTA affidavit concerning property in Fontana, California.

(f) The wrongful use of threats and intimidation, constituting extortion in violation of the Hobbs Act, to extract property (money) from ARE 27, in violation

of 18 USC § 1951.

61. Each violation of the aforesaid statutes by defendants and other participants, known and unknown, constitutes an instance of "racketeering activity" within the meaning of 18 U.S.C. § 1961(1).

62. The multiple acts of racketeering activity by defendants and the Petra Enterprise were interrelated and part of a common and continuous pattern of fraudulent schemes which had and have a real threat of continuing, thus constituting a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5). These acts began in 2006 and continued, on a regular basis, at least monthly, to the present. In addition, defendants' continue to attempt to collect on the $10M Promissory Note fraudulently obtained to the detriment of plaintiff, continually engaging in additionally infringing acts. This activity continues as of the date of this complaint and, by its history, appears likely to continue into the future.

63. By reason of the foregoing circumstances and events, each and every one of the defendants and other participants, known and unknown, unlawfully, willfully and knowingly participated, directly or indirectly, in the conduct of the affairs of the Petra Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

64. As the proximate cause of the conduct of the Petra Enterprise, ARE 27 has been injured in its business or property in excess of seventy five thousand dollars ($75,000), the jurisdictional limit, as per the Prayer.

65. Plaintiff is entitled to recover three-fold (treble) the sum of damages sustained as a result of the unlawful scheme, together with attorney fees and costs, in accordance with 18 U.S.C. § 1964(c).

///

///

///

///

## SECOND CLAIM FOR RELIEF

**(RICO – Violation of 18 U.S.C. § 1962(d) by Conspiracy to Violate 18 U.S.C. § 1962(c))**

**Against All Defendants**

66. Plaintiff incorporates by reference all the foregoing paragraphs as though fully set forth herein.

67. By reason of the aforementioned circumstances and events, each and every one of the defendants and other participants, known and unknown, unlawfully, willfully and knowingly conspired to violate the provisions of 18 U.S.C. § 1962(c) and to violate the provisions of 18 U.S.C. § 1962(d) by unlawfully, willfully and knowingly conspiring to participate, directly or indirectly, in the conduct of the affairs of the Petra Enterprise through a pattern of racketeering activity.

68. As the proximate cause of that conduct, plaintiff has been injured in its business or property in excess of seventy five thousand dollars ($75,000), the jurisdictional limit, as per the prayer.

69. Plaintiff is entitled to recover three-fold (treble) the sum of damages sustained as a result of the unlawful scheme, together with attorney fees and costs, in accordance with 18 U.S.C. § 1964(c).

## THIRD CLAIM FOR RELIEF

**(Fraud/Concealment)**

**Against All Defendants**

70. Plaintiff incorporates by reference all the foregoing paragraphs as though fully set forth herein.

71. Defendant Petra and its individuals, by and through its agents, including American Residential, made multiple representations to plaintiff, including but not limited to representations during hundreds of telephone calls, personal interactions in the American Residential offices, and written correspondence with plaintiff beginning

in or about 2006, and continuing until approximately 2008, wherein defendants falsely represented and concealed material facts, including the following:

(a) Concealing and failing to disclose to ARE 27 American Residential's conflict of interest and non-arm's length transactions. Instead, the individual defendants, while secretly controlling American Residential (and by extension ARE 27) through insiders, caused ARE 27 to consummate transactions that were against its best interests. Defendants took great efforts to conceal this from ARE 27 by, among other things, working through trusted insiders that they had hired to engage in self-dealing transactions.

(b) Concealing and failing to disclose the true nature of the transactions to which ARE 27 was a party by using American Residential C as a conduit for transactions on behalf of Petra.

(c) Misrepresenting that ARE 27 was receiving the best investment options & opportunities available to American Residential;

(d) Misrepresenting that the transfers from ARE 27 to other entities by American Residential were in ARE 27's best interests;

(e) Misrepresenting that the above transactions were arm's length transactions, allegedly not tainted by the corruption and self-dealing described above.

72. The above representations were known in fact by Petra and the individuals to have been made, to have in fact been false, and were made with knowledge of their falsity.

73. With actual knowledge of Petra and the individual defendants, Jeffrey Kirsch, as President of American Residential, Inc., and others, made each of the foregoing misrepresentations to plaintiff ARE 27, including Phil Sigel of Bancroft Insurance & Casualty, which was the beneficial and/or equitable owner of ARE 27 at various times from 2006 through 2008, including that American Residential was acting in the best interest of ARE 27; that American Residential was negotiating market prices in purchases and/or sales between ARE 27 and other entities managed

by American Residential; that American Residential was acting within its full capacity to maximize profits and minimize losses to ARE 27. The misrepresentations were communicated verbally by Jeffrey Kirsh and others at American Residential to ARE 27, including Phil Sigel of Bancroft.

74. The misrepresentations were made to plaintiff ARE 27. All of defendants' representations were in fact false. All defendants knew at the time that the representations were made that they were false; and defendants were agents of each other in conducting the Petra Enterprise, including making these representations. Defendants, themselves, and/or through their agents at American Residential, concealed and suppressed the true facts, including the existence of preferential investments, and disadvantageous treatment compared to other investors, as alleged above in greater detail, although the true facts were known to them and they were under a duty to disclose those facts.

75. ARE 27 reasonably relied on the representations by defendants and the non-existence of the facts suppressed by defendants with respect to the scheme, and plaintiff was thus induced to provide information and allow the consummation of transactions that plaintiff would not otherwise have allowed. In addition, plaintiff relied on the false representations of defendants and defendants' agents, and diverted resources and incurred costs and expenses in seeking other more profitable business opportunities.

76. As a result of defendants' fraud and deceit, plaintiff has been damaged in an amount to be determined at the time of trial. In addition, defendants acted intentionally, willfully and with the intent to injure plaintiff, with malice, fraud and oppression. As a result, plaintiff seeks punitive and exemplary damages in an amount sufficient to punish defendants and to deter such conduct in the future.

/ / /

/ / /

/ / /

**FOURTH CLAIM FOR RELIEF**

**(Unfair Competition; Cal. Bus. & Prof. Code § 17200)**

**Against All Defendants**

77. Plaintiff incorporates by reference all the foregoing paragraphs as though fully set forth herein.

78. Defendants' conduct constitutes an unfair and fraudulent business practice and unfair competition, under California Business & Professions Code §§ 17200 et seq. As a result of defendants' acts of unfair competition, including acts that are unlawful, deceptive, and/or otherwise unfair, as specified above in detail, defendants have unfairly acquired or retained sums of money, in an amount to be proven at trial. Plaintiffs are entitled to restitution, plus an order that defendants disgorge all such unfairly acquired sums of money, and cease all activities that constitute unfair competition.

79. Defendants' conduct also constitutes unfair and fraudulent business practices under the common law. As a result of said defendants' conduct, plaintiff is entitled to an injunction enjoining defendants from any efforts to collect on the $10M Promissory Note, in addition to other appropriate remedies, as per the Prayer.

**FIFTH CLAIM FOR RELIEF**

**(Interference with Economic Relations)**

**Against All Defendants**

80. Plaintiff incorporates by reference all the foregoing paragraphs as though fully set forth herein.

81. At all material times hereto, plaintiff had actual and prospective contractual relationships with American Residential Equities, Inc., by and through, among other agreements, it's Operating Agreement. Pursuant to the Operating Agreement, American Residential Equities, Inc. was the Manager of ARE 27.

82. Defendants, by their conduct, knowing of the actual and prospective economic relationships between plaintiff and American Residential Equities, Inc, wrongfully, intentionally and willfully interfered with said relationship/contracts by inducing American Residential Equities, Inc. to breach its contractual duties to ARE 27. Defendants did, in fact, cause American Residential Equities, Inc. to breach its contractual duties to ARE 27, resulting in significant damages to ARE 27.

83. Defendants' acts are independently wrongful as they constitute fraud, conversion, conspiracy, extortion, and unfair competition, and violate trade customs and other legal rights as described in this complaint.

84. Defendants' acts caused actual disruption to plaintiff's economic relations – both prospective and actual.

85. As a result of said conduct, plaintiff has suffered damages, including lost profits, in an amount to be determined at trial.

86. In doing the acts alleged in this cause of action, defendants acted intentionally, willfully and with the intent to injure plaintiff, with malice, fraud and oppression. As a result, plaintiff seeks punitive and exemplary damages in an amount sufficient to punish defendants and to deter such conduct in the future.

## SIXTH CLAIM FOR RELIEF

**(Breach of Fiduciary Duty)**

**Against American Residential and the individual defendants**

87. Plaintiff herein incorporates by reference all the foregoing paragraphs as though fully set forth herein.

88. As the manager of ARE 27, American Residential owed fiduciary duties of the highest character to plaintiff ARE 27. As alleged more fully above, the individual defendants infiltrated and took control of American Residential both directly—by working in the offices of American Residential and directing it's business affairs—and indirectly, by using extortion and bribes to gain influence over

its officer and attorneys. In this way, the individual defendants became alter egos of the American Residential defendants, as alleged more fully above.

89. Defendants breached their fiduciary duties to plaintiff by defendants' acts and omissions as alleged herein.

90. As a direct, foreseeable, and proximate result of defendants' wrongful conduct alleged herein, plaintiffs have been damaged in amount to be determined according to proof at the time of trial, as specified in the Prayer.

## SEVENTH CLAIM FOR RELIEF

**(Unjust Enrichment)**

**Against All Defendants**

91. Plaintiff incorporates by reference all the foregoing paragraphs as though fully set forth herein.

92. The public policy of the State of California as expressed in California Civil Code Sections 2223 and 2224 forbids persons from being unjustly enriched by committing wrongs against another, including acts of fraud and violations of trust as alleged above.

93. In committing the acts and omissions alleged above, defendants have caused plaintiff loss and damage and have received and conferred upon themselves an unjust benefit by wrongfully retaining revenues, profits, and other sums of monies properly belonging to plaintiff, all at plaintiff's expense. As a result, defendants should be declared to be involuntary trustees, pursuant to constructive trust, for the benefit of plaintiff, of all monies, funds, assets and contractual rights resulting from defendants' wrongful acts and omissions, and defendants should be compelled to disgorge all such sums.

94. Plaintiff seeks disgorgement of the profits illegally obtained by defendants, and seeks an order unwinding their unjust enrichment and returning them to the financial position they would have occupied had their loans and investment

opportunities been sold in the normal course of business without detriment to ARE 27.

**PRAYER**

WHEREFORE, plaintiff demands judgment against defendants, jointly and severally, as follows:

1. For general, compensatory, and consequential damages in an amount to be determined according to proof at the time of trial, in excess of seventy five thousand dollars ($75,000);

2. For treble damages in accordance with RICO, 18 U.S.C. § 1964(c), and for the cost of the suit including reasonable attorney fees in accordance with 18 U.S.C. § 1963(c);

3. For interest at the highest legal rate commencing from the earliest date allowed by law;

4. For punitive and exemplary damages;

5. For attorney fees and costs;

6. For the imposition of a constructive trust, including related equitable remedies (including disgorgement and/or restitution);

7. For preliminary and permanent injunctions against defendant Petra, and their officers, directors, agents, employees, attorneys and all other person acting directly or indirectly in concert with defendants, from collecting or attempting to collect on the $10M Promissory Note and/or any judgment or other order in *Redwood v. Kirsch*, as defined above.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

8. For such other and further relief as the Court deems just and proper, together with costs and disbursements of this action, including but not limited to the costs of expert witnesses and the costs of other professionals.

LANZA & SMITH
A Professional Law Corporation

June 25, 2012

Anthony Lanza
Brodie H. Smith
Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial in this action.

LANZA & SMITH
A Professional Law Corporation

June 25, 2012

Anthony Lanza
Brodie H. Smith
Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Christina A. Snyder and the assigned discovery Magistrate Judge is David T. Bristow.

The case number on all documents filed with the Court should read as follows:

**CV12- 5537 CAS (DTBx)**

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

---

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
**312 N. Spring St., Rm. G-8**
**Los Angeles, CA 90012**

[ ] **Southern Division**
**411 West Fourth St., Rm. 1-053**
**Santa Ana, CA 92701-4516**

[ ] **Eastern Division**
**3470 Twelfth St., Rm. 134**
**Riverside, CA 92501**

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
Anthony Lanza (SBN 156703)
Brodie H. Smith (SBN 221877)
LANZA & SMITH
3 Park Plaza, Suite 1650
Irvine, CA 92614

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

American Residential Equities XXVII, LLC, A Delaware Limited Liability Company;

PLAINTIFF(S)

v.

REDWOOD RECOVERY SERVICES, LLC, a Florida Limited Liability Company; PETRA OPPORTUNITY FUND, LTD., a Cayman Islands Company; PETRA FINANCE, LLC, a Florida Limited Liability Company; PETRA OPPORTUNITY MANAGEMENT, LLC; AMERICAN RESIDENTIAL EQUITIES, INC., a Delaware Corporation; AMERICAN RESIDENTIAL EQUITIES, LLC, a a Delaware Limited Liability Company; MIGUEL CARMONA, an individual; JOHN HANSEN, an individual; ERICK MAGNO, an individual; CHRISTIAN CUNHA, an individual; AIDEN COUCH, an individual; and DOES 1 through 10 inclusive;

DEFENDANT(S).

CASE NUMBER

CV12-5537-CAS(DTBx)

**SUMMONS**

TO: DEFENDANT(S):

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached [x] complaint [ ] ______ amended complaint [ ] counterclaim [ ] cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Lanza & Smith, whose address is 3 Park Plaza, Suite 1650, Irvine, CA 92614. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: JUN 25 2012

By: MARILYN DAVIS
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
American Residential Equities XXVII, LLC

**DEFENDANTS**
Redwood Recovery Services, LLC, et al.

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Anthony Lanza (SBN 156703)
Brodie H. Smith (SBN 221877)
LANZA & SMITH
3 Park Plaza, Suite 1650
Irvine, CA 92614
(949) 221-0490

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)
☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No ☒ **MONEY DEMANDED IN COMPLAINT: $** OVER $75k

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

18 U.S.C. 1962(C) - Civil Rico. Defendants formed an illegal enterprise with the purpose of unlawfully directing self-dealing transactions among related entities to benefit themselves at teh expense of plaintiff.

**VII. NATURE OF SUIT (Place an X in one box only.)**

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☒ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Act
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Info. Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Fed. Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury-Med Malpractice
☐ 365 Personal Injury-Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus-Alien Detainee
☐ 465 Other Immigration Actions

**TORTS PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 445 American with Disabilities - Employment
☐ 446 American with Disabilities - Other
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence Habeas Corpus
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus/ Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE/ PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS - Third Party 26 USC 7609

**FOR OFFICE USE ONLY:** Case Number: CV12-5537

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? [X] No [ ] Yes

If yes, list case number(s):

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? [X] No [ ] Yes

If yes, list case number(s):

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)

[ ] A. Arise from the same or closely related transactions, happenings, or events; or

[ ] B. Call for determination of the same or substantially related or similar questions of law and fact; or

[ ] C. For other reasons would entail substantial duplication of labor if heard by different judges; or

[ ] D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

[ ] Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

[ ] Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES | FLORIDA, UNITED KINGDOM, BRAZIL |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.

**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES & SAN BERNARDINO | |

*** Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**

**Note:** In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): [signature] **Date** June 25, 2012

BRODIE H. SMITH

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |